# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| WAYNE FENDER and<br>DONNA PULOUS,<br><br>       Plaintiffs,<br><br>       vs.<br><br>DCS, ASHLEY PETERS, SALLY<br>HERNANDEZ, SARAH SAILORS,<br>JUDGE KURTIS G. FOUTS, ANALEI<br>WHITLOCK, SAMANTHA DAGENAIS,<br>CHRISTIN BRAMLAGE,[1] ABIGAIL<br>DIENER, THE STATE OF INDIANA,<br>and PATRICK MANAHAN,<br><br>       Defendants. | 4:14-CV-024 |

## OPINION AND ORDER

This matter is before the Court on the: (1) Motion to Dismiss
Amended Complaint by Defendant Abigail Diener, filed by defendant
Abigail Diener on June 10, 2015 (DE #72); (2) Defendant, Analei
Whitlock's Motion to Dismiss Plaintiffs' Complaint Filed on April
28, 2015, filed by defendant Analei Whitlock on June 12, 2015 (DE
#76); (3) State Defendants' Motion to Dismiss Amended Complaint,
filed by defendants the State of Indiana, Indiana Department of
Child Services, Sally Hernandez, Sarah Sailors, Ashley Peters, and

---

[1] Plaintiffs' amended complaint lists the defendant as Kristin Bramlage,
but it is clear from other filings that the proper spelling is Christin and the
Court will refer to her as such throughout the order.

Judge Kurtis G. Fouts on June 19, 2015 (DE #85); and (4) Defendant Patrick Manahan's Motion to Dismiss Plaintiffs' Amended Complaint, filed by defendant Patrick Manahan on July 9, 2015 (DE #101). For the reasons set forth below, the motions to dismiss are **GRANTED**. To the extent that Plaintiffs have attempted to allege any federal claims in the amended complaint, they are **DISMISSED WITH PREJUDICE**. Any potential state law claims are **DISMISSED WITHOUT PREJUDICE**. The clerk is **DIRECTED** to close this case.

BACKGROUND

*Pro se* plaintiffs, Wayne Fender and Donna Marie Pulous (collectively "Plaintiffs"), filed their original complaint in cause number 4:14-CV-024 on March 10, 2014. Although written on a standard Complaint 42 U.S.C. section 1983 form, the form itself only listed the alleged causes of action;[2] the supporting facts and "evidence" were incorporated by reference over sixty plus additional pages. On May 5, 2014, several defendants, namely the State of Indiana, the Indiana Department of Child Services ("DCS"), Sarah Sailors, Sally Hernandez, Ashley Peters, and Judge Kurtis Fouts, filed a motion to dismiss the complaint, arguing it was unintelligible and failed to state any claims for relief. On May 13,

---

[2] The complaint listed defamation of character, discrimination, libel, constitutional infringement, religious bias, perjury, filing false report, false accusations, alternative healing bias, and family bias as supposed causes of action.

2014, Plaintiffs filed a response in opposition to the motion to dismiss and later filed a supplement to that response. On August 7, 2014, Plaintiffs, along with an additional *pro se* plaintiff, Heather Mock, filed another complaint, this time in cause number 4:14-CV-061. That complaint, also written on a standard section 1983 form, added several new defendants to the list. For the causes of action section, Plaintiffs only stated that "we provided paperwork that gives a clear-cut view of our evidence." That attached paperwork spans the course of over one-hundred and seventy pages. Plaintiffs later filed a motion to supplement that complaint with another sixteen pages of single-spaced argument and "evidence." On August 12, 2014, defendant Patrick Manahan filed a motion for judgment on the pleadings in cause number 4:14-CV-024 for failure to state a claim, arguing that "it is difficult to discern what the plaintiffs believe Patrick Manahan did wrong, much less why he is a defendant here."

On September 22, 2014, defendants, Sarah Sailors, Sally Hernandez, Ashley Peters, Kurtis Fouts, DCS, and the State of Indiana, filed a motion to consolidate the two cases pursuant to Federal Rule of Civil Procedure 42(a) and Local Rule Rule 42-2. On October 21, 2014, the motion to consolidate was granted by Magistrate Judge John E. Martin, who stated that "the cases involve common issues of law and fact relating to the removal of a child from the care of [plaintiffs]. Trying the cases separately would

require duplication of efforts, both on behalf of the parties and of the Court, and might result in inconsistent results." Judge Martin directed that all future filings were to be made in cause number 4:14-CV-024 only. Prior to that time, however, the following filings were made in cause number 4:14-cv-061: (1) on September 26, 2014, defendant, Analei Whitlock, filed a motion to dismiss, arguing that plaintiffs' complaint was "unintelligible" and failed to state any valid claims; (2) on September 29, 2014, defendants, Ashley Peters and the State of Indiana, filed a motion to dismiss plaintiffs' complaint arguing that it was "un-intelligible," failed to state a claim for possible relief, and was actually just an improper attempt to amend the original complaint in cause number 4:14-CV-024; (3) on September 30, 2014, defendant, Samantha Dagenais, filed a motion to dismiss or for a more definite statement, arguing that plaintiffs' complaint including the attached "evidence" was "so lengthy and incomprehensible" that it failed to state any "coherent or intelligible" claims; (4) also on September 30, 2014, defendant, Abigail Diener, filed a motion to dismiss, arguing that plaintiffs' complaint was "illogical," devoid of any factual basis, and failed to meet federal pleading standards; and (5) on October 6, 2014, defendant, Christin Bramlage, filed a motion to dismiss, arguing that the complaint and "evidence" together were "so lengthy and incomprehensible" that they failed to contain any "coherent or intelligible" claims.

Plaintiffs filed responses to the motions, along with several supplements and/or status updates, some of which were stricken by Magistrate Martin for failure to comply with the Local Rules, and none of which shed any real light on the nature of Plaintiffs' claims.

On March 31, 2015, this Court struck both complaints, granted Plaintiffs until May 7, 2015, to submit an amended complaint, denied the motions to dismiss as moot, and directed the clerk to close the case in cause number 4:14-CV-061. In that opinion and order, the Court set forth the standards for drafting federal complaints and cautioned Plaintiffs that:

> The amended complaint needs to contain a short and plain statement of what happened to plaintiffs to give rise to their claims. They need to state when these events occurred and clearly explain how each defendant was involved with each claim that they are raising against that defendant. Additionally, the complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted). "[A] plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations and footnote omitted). "[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal* at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). However, the plaintiffs should *not* resort to attaching voluminous pages of documents or "evidence" in place of the requirements stated above.

(DE #52.)

Plaintiffs[3] filed their amended complaint on April 28, 2015. (DE #53.) In the causes of action section of the 42 U.S.C. section 1983 complaint form, Plaintiffs simply state "paper work/descriptions included." (*Id.*) The attached paperwork includes roughly thirty (30) single-spaced typed pages plus several additional pages of what appears to be a child's coloring/activity

---

[3] Heather Mock is not listed as a plaintiff in the amended complaint.

book.  (*Id*.)  The various defendants filed the instant motions to dismiss throughout June and July of 2015.  Although Plaintiffs filed numerous documents in the subsequent months, none of those documents constituted a response to any of the motions to dismiss, and they were stricken by Magistrate Judge Martin on August 21, 2015.  (DE #108.)  Thus, the motions to dismiss are ripe for adjudication.


FACTS

It is clear from prior filings that this case stems from the removal of Plaintiffs' child,[4] VDF, from their home by DCS after he was determined to be a Child in Need of Services ("CHINS"), though the amended complaint itself contains no specific references to the removal or any other state court proceedings.  Plaintiffs purport to bring their claims pursuant to 42 U.S.C. section 1983, and they begin by asserting generally that they have been subjected to "religious discrimination and bias" by all defendants because Wayne Fender is Jewish.  (DE #53, p. 5.)  However, Plaintiffs state that Mr. Fender has "been keeping [his] 'true' religious beliefs and racial background secret for the last 18 years" and only "re-confirmed [his] faith and commitment to the Jewish Community on the 17th of April," a mere eleven days before the amended complaint was

_____

[4] Wayne Fender is the biological father and Heather Mock is the biological mother of VDF.  Donna Pulous has been described as the child's Godmother and caregiver.

filed. (*Id.*) Although Mr. Fender claims that he left "clues" as to his Jewish heritage for the defendants to discover, he admits that no one ever assumed he was Jewish. (*Id.*) Plaintiffs assert that one of the reasons the children were removed from the home by DCS was because of their "differing religious views," and Mr. Fender attempts to clarify that assertion by stating, "I can never accept any excuses for Indiana's own Anti-Semetic (sic) policies. Feeling it does not matter if I admitted to being a Jew or not. It can never be a (sic) excuse for discriminating against a family." (*Id.* at 6.) Plaintiffs liken the situation to the "Racial codes mandated by the Nazi Regime of Germany in the 1930s." (*Id.* at 7.)

The remaining pages of the amended complaint attempt to set forth "charges" for each defendant as follows: (1) Abigail Diener: *guardian ad litem* -- perjury on court documents and in court, extreme malice, personal bias, familial bias, false allegations of stalking and menacing, failure to understand a special needs child, failure to inform a judge, and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork"; (2) Analei Whitlock: pediatric nurse practitioner -- perjury and false statements on court documents, "contradictive medical paperwork and failure to obtain critical medical information," giving our personal information, and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local

funds, failure to provide timely paperwork"; (3) Ashley Peters: DCS family case manager -- false accusations, failure to maintain proper communication, failure to provide proper medical and other paperwork, "condones bad parenting in the form of lying," failure to listen to parents, framing paperwork to favor DCS and their case, "failure to protect a child in peril, collusion and conspiracy, knowledge of neglect and abuse, assault and battery on a child, failure to report child abuse and take proper measures to protect a child endangered, malfeasance and nonfeasance," failure to maintain familial relations, providing false testimony and perjury, lying about medical appointments, discrimination, "stalling tactics and failure to inform what to do to reunification," failure to inform a judge, and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork"; (4) DCS -- failure to train employees properly, failure to do a proper investigation of the case, "discrimination, religious bias, family bias, alternative healing bias, incompetency, mismanaging case," perjury, failure to inform a judge and reckless child endangerment, failure to read court documents, condoning child abuse and knowledge of unreported child abuse, and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork, psychological terrorism"; (5) Judge Kurtis G.

Fouts -- judicial bias, "terroristic threat," accusation of drugs, discrimination, "illegally ordering school and vaccinations," improper public conduct, "constitutional rights violation," ordering dentistry, and judicial misconduct; (6) Christin Bramlage: foster parent -- false statements and allegations, "child abuse as witnessed by biological parents and Godmother," improper conduct with a child, failure to provide medical information to DCS, failure to properly take care of a special needs child, "false allegations of stalking and menacing and collusion," and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork"; (7) Patrick Manahan: court appointed attorney for Wayne Fender -- negligence, mental anguish, deceit and collusion, fraud/constructive fraud, "malicious prosecution - wrongfully charged (acted for some purpose other than aiding his client)," mismanaging case, improperly preparing defendant for case, improper public conduct, biased attitude toward client, constitutional violation, failure to represent client fairly, "nonfeasance - failure to act that results in injury," and discrimination; (8) Sally Hernandez: DCS case manager -- false reporting and perjury on court documents, coercion of false statements, failure to provide evidence, accusations of severe neglect without proper evidence, emotional and physical trauma to a child, improper investigation of the facts, discrimination,

religious bias, mental anguish and suffering, slander and libel, and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork"; (9) Samantha Dagenais: Bauer Caseworker in Monticello, Indiana –– failure to inform parents of expectations, accusations or drug use, interference in progress, incompetence in dealing with a special needs child, mismanaging case, "witnessed child abuse and did not report it," and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork"; (10) Sarah Sailors: DCS supervisor –– false reporting and perjury on court documents, "making terroristic threats," "broke federal law against discrimination of the disabled," improper conduction of an interview, failure to report evidence, libel and slander, mental anguish, and "collusion, conspiracy, holding a child against their will, fraud by deception, misusing state and local funds, failure to provide timely paperwork"; and (11) the State of Indiana –– constitutional violations, civil rights violations and discrimination, civil rights violations and discrimination, and human rights violations. (*Id*. at 10-33.) The "examples" allegedly pertaining to each cause of action contain a series of perceived wrongs set forth as a stream of thoughts and opinions. (*Id*.)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Plus, *Iqbal* requires that a plaintiff plead content which allows this Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. 556 U.S. at 678.

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the

plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.,* 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and, "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Twombly,* 550 U.S. at 569 n. 14 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (quotation marks, ellipsis, citations and footnote omitted). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank,* N.A., 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

The Court notes that Plaintiffs are appearing *pro se* in this matter. Generally, although "pro se litigants are masters of their

own complaints" and "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants," *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005), a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (quotation marks omitted)). Even *pro se* plaintiffs must "make their pleadings straightforward so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). They must "be presented with sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages . . . ." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) requires that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) ("A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation."), and *Jennings v. Emry,* 910 F.2d 1434,

1436 (7th Cir. 1990) (a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the plaintiff's claims). In sum, Rule 8 requires a complaint to be presented with "intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and [,] if so [,] what it is." *Vicom*, 20 F.3d at 775. Wordy, redundant, and seemingly interminable complaints violate the letter and the spirit of Rule 8 and may be dismissed with leave to refile. *Id.* at 776.

Plaintiffs' complaint fails to meet these standards for the same reasons discussed in this Court's previous order. (See DE #52.) Despite their laborious recitation of multiple named "charges" pertaining to each defendant, Plaintiffs have not presented relevant facts in a manner that would intelligibly connect any of the "examples" of alleged wrongdoings of the defendants to recognizable civil causes of action. Allegations of unspecified grand conspiracies[5] do not serve to bring the amended

---

[5] Plaintiffs repeatedly assert that, on January 29, 2014, several of the defendants "came into knowledge of VDF's condition that he had the beginnings of Asperger's Syndrome and thereby conspired to keep this knowledge secret. To make DCS case as severe neglect, [the various defendants] helped keep this information from the family. We also believe to cover up this fact, DCS agents kept VDF long enough for adoption by using suspicious stall tactics and urged or coerced various service providers to stall the progress reports." (See e.g. DE #53, p. 17.) "Although conspiracy is not something that Rule 9(b) of the Federal Rules of Civil Procedure requires be proved with particularity, and so a plain and short statement will do, it differs from other claims in having a degree of vagueness that makes a bare claim of 'conspiracy' wholly uninformative to the defendant. Federal pleading entitles a defendant to notice of the plaintiff's claim so that he can prepare responsive pleadings. That is why courts require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir.

15

complaint within the federal pleading standards. Although
Plaintiffs have provided many labels and conclusions, it is unclear
what is actually being alleged against each defendant. Neither the
Court nor the parties are required to sift through thirty single
spaced pages containing a litany of disjointed allegations to parse
a potentially valid claim from its contents. See *Jennings*, 910
F.2d at 1436 (a complaint must be presented with intelligibility
and clarity "sufficient to avoid requiring a district court or
opposing party to forever sift through its pages in search of . .
. understanding" "whether a valid claim is alleged and if so what
it is."); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d
374, 378 (7th Cir. 2003) ("[A]lthough [f]at in a complaint can be
ignored, dismissal of a complaint on the ground that it is
unintelligible is unexceptionable.") (internal quotation marks and
citations omitted). Usually, such shortcomings result in a
without-prejudice dismissal, and a plaintiff is given an
opportunity to amend the complaint to comply with Rule 8. Here,
however, the Court has already granted Plaintiffs leave to amend,
and those deficiencies have not been cured. Additionally, as will

---

2006) (internal citations omitted). What is impossible to decipher from the
rambling allegations of Plaintiffs' amended complaint is the supposed purpose of
the conspiracy. In other words, the "why" recognized by the Seventh Circuit as
vital to establishing a conspiracy claim is missing here. *Brokaw v. Mercer
County*, 235 F.3d 1000, 1016 (7th Cir. 2000) (a plaintiff must identify the "who,
what, when, why and how" of a conspiracy). Plaintiffs' vague references to
religious discrimination and bias at the beginning of the complaint, which are
untied to any specific "charges" described later, do not shed light on the
matter, as Plaintiffs have directly admitted that they have been keeping their
"true" religious beliefs and background a "secret" for the past eighteen years
and that the defendants never assumed Mr. Fender was Jewish.

be further described below, a failure to comply with Rule 8 is only one of several problems with the amended complaint. Thus, Plaintiffs' attempted federal claims brought pursuant to 42 U.S.C. section 1983 are dismissed with prejudice. That said, the court declines to exercise supplemental jurisdiction over any possible state law claims that may exist, so they are dismissed without prejudice. See *Hansen v. Bd. of Trustees of Hamilton S.E. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008).

As noted, a failure to comply with Rule 8 is only one of several problems with the amended complaint. For example, the state defendants are correct in pointing out that, to the extent that any claims can be discerned, the Eleventh Amendment bars suit against the State of Indiana, DCS, and the state employees in their official capacities. The Eleventh Amendment provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As noted by the Seventh Circuit, "[i]f properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Council 31 of the Am. Fedn. of State, Cnty. and Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881-82 (7th Cir. 2012) (citing *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d

365, 370 (7th Cir. 2010).  The state defendants have properly raised the defense in their motion, and it is clearly applicable to the case at bar.  The state itself is entitled to sovereign immunity, and, because DCS is considered an agency of the state, it too is entitled to such immunity.  See *Holmes v. Marion Cnty. Off. of Fam. and Children*, 349 F.3d 914, 919 (7th Cir. 2003) ("[C]ounty offices of family and children in Indiana now must be classified as part of the state for purposes of the eleventh amendment.").  As to the employees of DCS (namely Ashley Peters, Sally Hernandez, and Sarah Sailors), the Court notes that Plaintiffs have failed to specify the capacity in which they are being sued.  Thus, they are deemed to have been sued in their official capacities and those claims must be dismissed as barred by the Eleventh Amendment as well.  See *Stevens v. Umsted*, 131 F.3d 697, 706-07 (7th Cir. 1997) ("In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only. It is well established, of course, that any claim for damages under 42 U.S.C. § 1983 against state officials in their official capacities must be dismissed as barred by the Eleventh Amendment.") (internal quotation marks and citations omitted).[6]

---

[6]   None of the exceptions for enjoining prospective action that would violate federal law described in *Ex parte Young*, 209 U.S. 123 (1908) are applicable, as Plaintiffs have simply listed their requested relief as "monetary," "all defendants federally prosecuted (criminal law) by the proper

18

Next, as to Judge Kurtis G. Fouts, the Court notes that under the doctrine of judicial immunity, state judges are entitled to absolute immunity from damages for judicial acts regarding matters within the court's jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction'"). A judge is absolutely immune for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. *Id.* at 359; *Dellenbach v. Letsinger*, 889 F.2d 755, 759 (7th Cir. 1989). There is no indication that any of the allegedly wrongful acts attributed to Judge Fouts in the amended complaint, whether they can be deciphered to state a claim or not, were outside of the scope of his jurisdiction or were not performed within his judicial capacity. Accordingly, Judge Fouts is entitled to judicial immunity against Plaintiffs' claims.[7]

---

authorities," and an apology to the family by all involved. (DE #53, p. 3.)

[7] The state defendants also advance an argument that the Court lacks jurisdiction because the *Rooker-Feldman* doctrine precludes Plaintiffs' claims. However, the Seventh Circuit has emphasized that the doctrine is a narrow bar to federal court jurisdiction with "extremely limited applicability." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). The court in *TruServ* held that the doctrine is inapplicable unless the state court proceedings in question have ended. *Id.* at 591. Here, Plaintiffs claims were filed in federal court were filed before the underlying state court proceedings had ended.

Similarly, as to Abigail Diener, whom Plaintiffs describe as the "*guardian ad litem*/children's lawyer,"[8] the concept of absolute immunity applies as well. The Seventh Circuit has described *guardians ad litem* as "arms of the court" who, like judges, are deserving of special protection. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). This is because "[e]xperts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations without the worry of intimidation and harassment from dissatisfied parents." *Id.* Thus, "Guardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction." *Id.* As with Judge Fouts, to the extent that the actions of Abigail Diener can be parsed from the amended complaint, there is no indication that she acted outside of her court-appointed duties. Thus, she is also entitled to absolute immunity.

For the remaining defendants, Plaintiffs' amended complaint does not adequately allege that they were acting under color of law. To state a claim for relief under 42 U.S.C. section 1983, "a plaintiff must allege the violation of a right secured by the

---

[8] This is how Ms. Diener is described in the attached paperwork. (DE #53, p. 10.) On the section 1983 complaint form itself, in the section asking for the defendant's name, job title/government agency, and work address, Plaintiffs simply list Abigail Diener as "Lawyer GAL." (*Id.* at 2.)

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. at 49. Here, Plaintiffs describe Patrick Manahan as the "court appointed attorney for Wayne Fender."[9] As pointed out by Mr. Manahan, he undertook the representation of Wayne Fender through his private law practice, and there is no allegation that he is a government employee. Although Mr. Manahan was appointed by the Court, the relationship between he and Mr. Fender was identical to that of any other lawyer and client. That is because, "[o]nce a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981). When such an attorney performs the traditional functions as counsel to a defendant in a proceeding, he does not do so acting under color of state law. *Id*. at 325. See also *Hansen v. Ahlgrimm*, 520 F.2d 768, 770 (7th Cir.

---

[9] This is how Mr. Manahan is described in the attached paperwork. (DE #53, p. 24.) On the section 1983 complaint form itself, in the section asking for the defendant's name, job title/government agency, and work address, Plaintiffs simply list Patrick Manahan as "Lawyer." (*Id*. at 2.)

1975) ("It is established that a private attorney, while participating in the trial of private state court action, is not acting under color of state law.") To the extent that the actions of Mr. Manahan can be deciphered from the amended complaint, they are consistent with that of a private attorney, and there is no showing of state action required for a section 1983 claim.[10] As to Analei Whitlock, a "pediatric nurse practioner (sic),"[11] Plaintiffs fail to identify any state or local government agency that employed her. For the "charges" alleged, Plaintiffs list actions taken by Ms. Whitlock with regard to VDF's medical care and reporting and assert that "DCS had made Ms. Whitlock seem as if she can doctor the children." This allegation is insufficient to allege that she acted under color of state law. See *Natl. Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (state action exists when an individual exercises power as possessed by virtue of state law and made possible only because they were clothed with that authority); see also *Rangel v. Reynolds*, 607 F. Supp. 2d 911, 927

---

[10] See *Snipes v. Palmer*, 186 Fed. Appx. 674 (7th Cir. 2006) ("Even though attorneys are licensed and regulated under state law, they are private actors who do not function under color of law unless they work in concert with government officials to deprive persons of their constitutional rights. While [the plaintiff] alleges that [the defendant] conspired with this court and Illinois prison officials, his complaint says nothing about the timing, scope, and terms of the purported agreement and therefore does not satisfy the minimal requirements of notice pleading.") (internal citations omitted). See also footnote number five, *supra*.

[11] This is how Ms. Whitlock is described in the attached paperwork. (DE #53, p. 12.) On the section 1983 complaint form itself, in the section asking for the defendant's name, job title/government agency, and work address, Plaintiffs simply list Analei Whitlock as "Nurse." (*Id*. at 2.)

(N.D. Ind. 2009) ("a physician and a pediatric center were not state actors even when they contracted with the state and received compensation in return for reporting their findings to the state's Department of Children and Family Services and testifying at criminal proceedings") (citing *Evans v. Torres*, No. 94 C 1078, 1996 WL 5319, at *7 (N.D. Ill. Jan 4, 1996)). Because it has not been adequately alleged that Ms. Whitlock is a state actor, the only way she could be held liable under section 1983 is if she acted in concert with state actors. *Rangel*, 607 F.Supp.2d at 927. And, as described above, Plaintiffs' prolix and rambling allegations of unspecified conspiracies do not provide that necessary link. Similarly, as to Samantha Dagenias, "Bauer Caseworker in Monticello, IN,"[12] Plaintiffs fail to allege that she was employed by the state of Indiana or any of its agencies. They refer to her counseling/treatment of VDF but do not describe how she acted as an agent of the state or adequately allege that she and any other state official jointly collaborated to deny Plaintiffs of any constitutional rights. See *Cunningham v. Southlake Ctr. For Mental Health, Inc.*, 924 F.2d 106, 107-08 (7th Cir. 1991) (counselor worked as a mental health professional for a company that was contracted with the county jail to perform services to the inmates;

---

[12] This is how Ms. Dagenias is described in the attached paperwork. (DE #53, p. 28.) On the section 1983 complaint form itself, in the section asking for the defendant's name, job title/government agency, and work address, Plaintiffs simply list Samantha Dagenias as "Caseworker." (*Id.* at 2.)

the court held that the private company neither took joint action under color of law nor acted pursuant to the state's delegation of authority).  Finally, as to Christin Bramlage, the "foster parent,"[13] of VDF, she is not alleged to be an employee of any state or local agencies.  To the extent that any actions of Ms. Bramlage can be deciphered in the amended complaint, they appear to center around her treatment of VDF and alleged failure to supply DCS with accurate or proper reports.  However, "foster parents, even if paid by the state, are not state agents for constitutional purposes." *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990); *McCrum v. Elkhart Cnty. Dept. of Pub. Welfare*, 806 F. Supp. 203, 208 (N.D. Ind. 1992) ("Nonetheless, the defendants must have acted under color of state law to be liable under § 1983, and the court does not believe that foster parents act under color of state law.").  And, as previously stated, Plaintiffs' prolix and rambling allegations of unspecified conspiracies do not provide that necessary link.  See e.g. *Rangel*, 607 F.Supp.2d at 927.

Given the shortcomings outlined above, and in light of the fact that Plaintiffs have already been given an opportunity to conform their complaint to federal pleading standards, the Court finds that any further attempt to allow Plaintiffs to amend their

---

[13] This is how Ms. Bramlage is described in the attached paperwork.  (DE #53, p. 22.)  On the section 1983 complaint form itself, in the section asking for the defendant's name, job title/government agency, and work address, Plaintiffs simply list Christin Bramlage as "Foster Parent."  (*Id.* at 2.)

complaint would be unwarranted and futile. *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").


CONCLUSION

For the foregoing reasons, the Motion to Dismiss Amended Complaint by Defendant Abigail Diener (DE #72); Defendant, Analei Whitlock's Motion to Dismiss Plaintiffs' Complaint Filed on April 28, 2015 (DE #76); State Defendants' Motion to Dismiss Amended Complaint (DE #85); and Defendant Patrick Manahan's Motion to Dismiss Plaintiffs' Amended Complaint (DE #101) are **GRANTED**. To the extent that Plaintiffs have attempted to allege any federal claims in the amended complaint, they are **DISMISSED WITH PREJUDICE**. Any potential state law claims are **DISMISSED WITHOUT PREJUDICE**. The clerk is **DIRECTED** to close this case.


**DATED: March 29, 2016**          **/s/Rudy Lozano, Judge**
                                   **United States District Court**